In re Robert Lynn SCHOLZ; Carolyn Gail Scholz, Debtors.

Michael Hugh Meyer, Chapter 13 Trustee, Appellant,

v.

Robert Lynn Scholz; Carolyn Gail Scholz; United States Trustee, Appellees.

BAP No. EC–10–1153–MkZJu.

Bankruptcy No. 09–14453.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued And Submitted On Nov. 18, 2010.

Decided: March 22, 2011.

888

Brent D. Meyer, San Francisco, CA, for Appellant Michael H. Meyer, chapter 13 trustee.

Gary L. Huss, Law Offices of Gary Huss, Fresno, CA, for Appellees Robert L. Scholz and Carolyn G. Scholz.

---

* Hon. Gregg W. Zive, United States Bankruptcy Judge for the District of Nevada, sitting by designation.
1. Unless specified otherwise, all chapter and section references are to title 11 of the United

Before: MARKELL, ZIVE * and JURY, Bankruptcy Judges.

## OPINION

MARKELL, Bankruptcy Judge.

### INTRODUCTION

This appeal presents two related questions: (1) does the Bankruptcy Code's definition of "current monthly income", found at 11 U.S.C. § 101(10A)("CMI"), include Railroad Retirement Act benefits ("RRA Benefits"); and (2) regardless of the answer to the first question, should RRA Benefits be considered when calculating projected disposable income under § 1325(b)? [1]

Debtors Robert Lynn Scholz and Carolyn Gail Scholz take the position that RRA Benefits do not count towards CMI, and should not be counted as part of projected disposable income. Their chapter 13 trustee, Michael Hugh Meyer (the "Trustee") disagrees on both counts.

This disagreement formed the basis of the Trustee's objection to the Debtors' plan. The bankruptcy court, however, confirmed the plan over the Trustee's objection in a published decision, *In re Scholz*, 427 B.R. 864 (Bankr.E.D.Cal.2010).

On appeal, we agree with the Trustee that RRA Benefits fall within the definition of CMI, but we agree with the bankruptcy court that RRA Benefits cannot be considered when calculating projected disposable income. As our first conclusion affects essential elements of the confirmation order and the order overruling the Trustee's objection, we VACATE and REMAND.

States Code, commonly referred to as the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

## FACTS

The facts relevant to this appeal are undisputed. The Debtors filed a voluntary petition and plan on May 15, 2009 seeking relief under chapter 13. Mr. Scholz, now retired, formerly worked in the railroad industry. Ms. Scholz is not retired and works for a real estate agency.

Pursuant to Rule 1007(b)(6), the Debtors filed Form B22C which indicated that they were below-median-income debtors and that their CMI was $3,822.98. This sum consisted of wages and commissions received on account of Ms. Scholz's current employment in the average monthly amount of $3,436.13 and retirement benefits received from her former employer in the average monthly amount of $386.85. The Debtors reported no monthly income or benefits of any type for Mr. Scholz in the body of their Form B22C. The Debtors did, however, attach an addendum in which they disclosed that they had excluded from their calculation of CMI Mr. Scholz's average monthly RRA Benefits.

That exclusion was significant. On their Schedule I the Debtors reported combined average monthly income of $6,799.61. This higher amount reflected Mr. Scholz's monthly RRA Benefits of $3,709.25. This income was also necessary. The Debtors' Schedule J indicated combined average monthly expenses of $6,361.36. The Debtors' plan committed to pay this positive difference of $438 per month to the Trustee. The plan provided for a 60–month term.

The Trustee did not object to the 60–month term, but did object to the manner in which the Debtors' expenses were calculated. To understand the basis of this objection, one must understand the role CMI plays in a debtor's chapter 13 bankruptcy case. If a debtor's CMI is above the median income level in the debtor's state, the debtor's expenses are subject to calculation using the method specified in § 707(b)(2). Section 707(b)(2) is typically more restrictive for above-median-income debtors because it refers to Internal Revenue Service standards instead of actual expenses. In contrast, debtors whose CMI is below-median generally are entitled to deduct all actual expenses that are "reasonably necessary" for their "maintenance or support." *See* 11 U.S.C. § 1325(b)(2), (3) and (4).[2]

On June 29, 2009, the Trustee filed his objection to the Debtors' plan. The Trustee asserted that the Debtors should have included Mr. Scholz's RRA Benefits in their CMI calculation. If this had been done, the Debtors would not have qualified as below-median-income debtors. While the effect on their projected disposable income is unknown, the Trustee asserts it would have increased their projected disposable income because he contended that the Debtors' actual expenses were more than those which would have been allowed under § 707(b)(2). Accordingly, the Trustee argued that the Debtors had not established, as required by § 1325(b)(1)(B), that their plan provided for payment to their unsecured creditors of all of their projected disposable income during the plan's five-year commitment period.[3]

Both sides briefed the issue of whether RRA Benefits must be included in the calculation of CMI. The court then re-

---

**2.** A debtor with above-median CMI is also required to commit to a 60–month plan if the plan does not pay unsecured creditors in full. That aspect is not at issue here as the Debtors voluntarily chose a 60–month commitment period.

**3.** The Trustee raised several additional concerns in his objection, but these other concerns have not been pursued on appeal.

quested supplemental briefing concerning the impact of the RRA's antigarnishment/antialienation statute, 45 U.S.C. § 231m, on the calculation of CMI. The Debtors filed a supplemental brief; the Trustee did not.

After the completion of briefing, the bankruptcy court entered an order overruling the Trustee's objection (the "Objection Order"). The court also issued a memorandum decision explaining its reasoning, 427 B.R. 864, in which it held that RRA Benefits should not be included in the calculation of CMI. The bankruptcy court acknowledged that, unlike benefits paid under the Social Security Act ("SSA Benefits"), RRA Benefits are not expressly excluded from the statutory definition of CMI. *Id.* at 870. In addition, the court noted that RRA Benefits are not the same as SSA Benefits, and that Congress could have expressly excluded RRA Benefits from the CMI calculation if it had wanted to do so (as it had done with SSA Benefits). *Id.* Citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), the bankruptcy court conceded that, if Congress enacted something other than what it meant to, it was Congress's sole prerogative to amend its statute to conform with its actual intent. 427 B.R. at 870.

Nonetheless, the bankruptcy court held that RRA Benefits must be wholly excluded from the operation of the Bankruptcy Code, including the calculation of CMI. *Id.*

at 871–72. The court's holding hinged entirely on its interpretation of the RRA's antigarnishment/antialienation statute, § 231m. *Id.* at 870–71.

The bankruptcy court thereafter entered an order confirming the Debtors' plan, and the Trustee appealed.[4]

## DISCUSSION

### A. Chapter 13 Plans, Disposable Income and CMI[5]

When a chapter 13 trustee objects to confirmation of a chapter 13 plan, the bankruptcy court may not confirm the plan unless the plan provides for payment to unsecured creditors of all of the debtor's projected disposable income over the course of the plan's commitment period. 11 U.S.C. § 1325(b)(1). The statute does not define the term "projected disposable income," but it does define the term "disposable income" in relevant part as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended ... for ... maintenance or support." 11 U.S.C. § 1325(b)(2).

For purposes of calculating disposable income, the type of expenses that may be deducted differs depending on whether the debtor's CMI is above or below the median for similarly-sized households in the debtor's state. *Hamilton v. Lanning*, —— U.S. ——, 130 S.Ct. 2464, 2470, 177 L.Ed.2d 23 (2010). Section 1325(b)(2) allows a debtor whose CMI is less than the median family income[6] of the state in which he or she

---

4. The bankruptcy court's confirmation order is a final order, which subsumed the court's prior, interlocutory Objection Order. We have jurisdiction to review the rulings made in both orders. *See United States v. 475 Martin Lane*, 545 F.3d 1134, 1140–41 (9th Cir. 2008); *Baldwin v. Redwood City*, 540 F.2d 1360, 1364 (9th Cir.1976). *See also* 28 U.S.C. § 158.

5. Determination of whether to include RRA Benefits in the definition of CMI and in the

calculation of projected disposable income requires us to construe the Bankruptcy Code and its intersection with other federal laws. We conduct this review de novo. *See Int'l Assn. of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 288–89 (9th Cir. BAP 2009).

6. "Median family income" is a defined term. *See* 11 U.S.C. § 101(39A).

resides to deduct their actual expenses so long as those expenses are reasonably necessary for the maintenance or support of the debtor and his or her dependents. If the debtor's CMI is above the median, however, Section 1325(b)(3) requires that debtor to calculate the expense side of his or her disposable income according to the standards set forth in the chapter 7 "means test" found in 11 U.S.C. § 707(b)(2).

When converting the statutorily defined term of "disposable income" into projected disposable income, a court starts with the CMI calculation as a presumptive start, and then "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Hamilton,* 130 S.Ct. at 2478; *American Express Bank, FSB v. Smith (In re Smith),* 418 B.R. 359, 365 (9th Cir. BAP 2009).

In short, for purposes of calculating projected disposable income, CMI determines what receipts to include initially and consequently strongly affects what a chapter 13 debtor ultimately must pay to confirm a plan over a trustee's objections. *See* 11 U.S.C. § 1325(b).[7]

**B. SSA Benefits, RRA Benefits and CMI**

 As with any other inquiry into statutory construction, our analysis begins with the language of the statute itself. *See Ransom v. FIA Card Servs., N.A.,* —— U.S. ——, 131 S.Ct. 716, 723, 178 L.Ed.2d 603 (2011). According to the Code, CMI "means the average monthly income from all sources" regardless of whether it is taxable. 11 U.S.C. § 101(10A)(A). CMI typically is measured by calculating the debtor's average monthly income during the full six months immediately preceding the debtor's bankruptcy filing. *See* § 101(10A)(A)(i). CMI also includes "any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor or the debtor's dependents...." 11 U.S.C. § 101(10A)(B). This last-mentioned form of CMI is sometimes referred to as "income replacement" and while it is expansive, it expressly excludes three specific types of payments. One of the exclusions is for SSA Benefits. 11 U.S.C. § 101(10A)(B).[8]

Notably, however, these exclusions from CMI do not include RRA Benefits. The bankruptcy court recounted the history of the Railroad Retirement Act ("RRA"), compared it to the Social Security Act ("SSA"), and noted that, even though both acts provided retirement and other income-replacement benefits to the public, there were some significant distinctions between the two acts. Unlike the SSA, some benefits under the RRA function like a private pension plan. As the bankruptcy court explained:

> RRA Benefits are available in two tiers. The upper tier, tier 1, is tied to the employee's earnings and years in railroad service. Tier 1 is the equivalent of a private pension plan. The lower and larger tier of benefits, tier 2, corresponds to the benefits that a nonrailroad employee would expect to receive for

---

**7.** In chapter 7 cases, CMI plays a different role, helping to determine whether a chapter 7 filing should be presumed abusive. *See* § 707(b)(2) and (7).

**8.** The other two exclusions are (i) payments to victims of war crimes or crimes against hu-

manity on account of their status as victims of such crimes; and (ii) payments to victims of international terrorism or domestic terrorism on account of their status as victims of such terrorism. 11 U.S.C. § 101(10A)(B).

equivalent nonrailroad service under the SSA.

427 B.R. at 869 (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 574–75, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), *partially superseded by statute*, 45 U.S.C. § 231m(b)).[9]

Under the rule of statutory construction known as *expressio unius est exclusio alterius*, the express exclusion of SSA Benefits from the CMI definition would not extend to RRA Benefits. *See generally Blausey v. U.S. Trustee*, 552 F.3d 1124, 1133–34 (9th Cir.2009) (applying *expressio unius est exclusio alterius* and holding that disability benefits paid by private insurer fall within the definition of CMI). In holding that the private insurer disability benefits were income within the meaning of the Bankruptcy Code, *Blausey* rejected the debtors' attempts to rely upon the Internal Revenue Code's definition of gross income and the dictionary definition of income. The *Blausey* court further noted that its holding was consistent with one of the legislative purposes underlying the

2005 amendments to the Bankruptcy Code: to ensure "that debtors repay creditors the maximum they can afford." *Id.* at 1133 (quoting H.R. Rep. 109–31(I) at 1, *reprinted in* 2005 U.S.C.C.A.N. 88, 89 (April 8, 2005)).

Consistent with *Blausey*, the bankruptcy court conceded that the CMI definition's express exclusion of SSA Benefits did not extend to RRA Benefits. The bankruptcy court nonetheless held that the RRA's antigarnishment/antialienation statute, § 231m,[10] excluded RRA Benefits from the operation of the Bankruptcy Code in its entirety, including the definition of CMI. In so holding, the bankruptcy court relied on *Carpenter v. Ries (In re Carpenter)*, 408 B.R. 244, 248–49 (8th Cir.BAP2009), which held that a similar, but not identical, antigarnishment/antialienation statute in the Social Security Act, 42 U.S.C. § 407,[11] prevented SSA Benefits from becoming property of the debtor's chapter 7 bankruptcy estate subject to distribution to the

---

**9.** The terminology used in *Hisquierdo* has not been uniformly adopted. The IRS refers to SSA Benefit equivalents under the Railroad Retirement Act as the upper tier or tier 1 benefits. *See e.g.* I.R.S. Publ'n No. 915, at p. 1 (Jan. 28, 2010), *available at* http://www.irs.gov/pub/irs-pdf/p915.pdf (last visited March 15, 2011) (referring to RRA Benefits equivalent to SSA Benefits as "tier 1 benefits"). The lack of uniformity does not affect our analysis or the outcome of this appeal.

**10.** 45 U.S.C. § 231m(a) provides:

(a) Except as provided in subsection (b) of this section and the Internal Revenue Code of 1986 [26 U.S.C. § 1 *et seq.*], notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated[.]

**11.** 42 U.S.C. § 407 provides:

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

(c) Nothing in this section shall be construed to prohibit withholding taxes from any benefit under this subchapter, if such withholding is done pursuant to a request made in accordance with section 3402(p)(1) of the Internal Revenue Code of 1986 [26 U.S.C.A. § 3402] by the person entitled to such benefit or such person's representative payee.

creditors of that estate. *Scholz,* 427 B.R. at 871.

The bankruptcy court's reliance on *Carpenter* is misplaced. *Carpenter* is distinguishable in a number of respects. *Carpenter* based its holding in part on language in the SSA's antigarnishment/antialienation statute that expressly protected SSA Benefits from "the operation of any bankruptcy or insolvency law." *See* 42 U.S.C. § 407(a). Section 231m contains no similar language. *Carpenter* also based its holding on the express exclusion of SSA Benefits from the Code's definition of CMI. *Carpenter,* 408 B.R. at 248. As already noted above, this express exclusion does not extend to RRA Benefits. Finally, the issue presented in *Carpenter* is quite different from the issue presented to us in this appeal. The *Carpenter* court needed to decide whether SSA Benefits were an asset that became a part of a debtor's chapter 7 bankruptcy estate pursuant to § 541. In contrast, the issue here is whether RRA Benefits received prior to the debtor's bankruptcy filing should be included in the calculation of CMI.

Our prior decision, *Hagel v. Drummond (In re Hagel),* 184 B.R. 793, 797–98 (9th Cir.BAP1995), *partially superseded by statute,* 11 U.S.C. § 101(10A)(B), is more on point than *Carpenter,* even though it was decided before Congress added CMI to the Code's definitions. In *Hagel,* we held that the SSA's antigarnishment/antialienation statute did not by itself exclude SSA Benefits from the calculation of disposable income for chapter 13 plan purposes. As we explained in *Hagel,* chapter 13 is voluntary in nature, and any debtor who seeks to realize the benefits of confirming a chapter 13 plan must be willing to *voluntarily* commit to that plan all non-excluded types of income and income replacements (which at the time included SSA Benefits). *Id.; see also Hamilton,* 130 S.Ct. at 2468–69 (noting that chapter 13 allows debtors to obtain a discharge and at the same time retain their nonexempt assets, but only if they "agree" to pay their creditors future income under a court-approved plan).

It is true that, subsequent to *Hagel,* Congress enacted § 101(10A)(B) expressly excluding SSA Benefits from the definition of CMI, which in turn effectively excludes SSA Benefits from the calculation of disposable income; however, there is nothing in the Bankruptcy Code, nor in the RRA's antigarnishment/antialienation statute, § 231m, that would prevent the reasoning of *Hagel* from applying to RRA Benefits, at least to the extent of determining whether RRA Benefits should be included in CMI.

The bankruptcy court also relied on the unique language in § 231m that prohibits "anticipation" of RRA Benefits: ". . . nor shall payment thereof be anticipated." [12] The bankruptcy court pointed out that the inclusion of RRA Benefits in the calculation of *projected* disposable income under § 1325(b)(1)(B) necessarily would contravene the antianticipation clause in § 231m.

As discussed below, we agree with the bankruptcy court that including RRA Benefits in projected disposable income would contravene the antianticipation clause of § 231m. But that point misses the targeted issue of whether RRA Benefits should be included in CMI. Unlike projected dis-

---

12. We have found only one other instance of an antianticipation clause in a federal statute, also in the Railroad Retirement Act. *See* 45 U.S.C. § 352(e). No other federal antigarnishment/antialienation statute that we know of has a similar clause. *See generally In re Pritchard,* 75 B.R. 877, 879 n. 4 (Bankr. D.Minn.1987) (listing such statutes and quoting their contents).

posable income, CMI is a historical figure that typically takes into account income and income replacements received by debtors during the six-month period immediately before their bankruptcy filing. *See* 11 U.S.C. § 101(10A)(A)(i) and (ii); *Hamilton,* 130 S.Ct. at 2470. Simply put, there is no anticipation of future payments in the calculation of CMI, so including RRA Benefits in the CMI calculation does not contravene the RRA's antianticipation clause.

Even though we disagree with the bankruptcy court's conclusion that § 231m effectively excludes RRA Benefits from the definition of CMI, we do acknowledge that there is some intuitive appeal to the bankruptcy court's holding. The similarities in underlying purpose between the RRA and SSA make it seem incongruous, at first blush, for Congress to have expressly excluded SSA Benefits but not RRA Benefits from the definition of CMI, and this incongruity perhaps suggests that Congress might have neglected to expressly exclude RRA Benefits by mere oversight. However, even if it is possible that Congress inadvertently neglected to expressly exclude RRA Benefits, it is not our job to fix the statute; if Congress believes that it made a mistake, Congress itself should fix the definition of CMI. *See Lamie,* 540 U.S. at 542, 124 S.Ct. 1023.

■ We cannot rule out that Congress might have intentionally decided to include RRA Benefits in the definition of CMI. Put another way, in the argot of statutory interpretation, we will not read into a statute additional words or terms, so as to expand or contract the statute's coverage, when the plain language of the statute as written is neither absurd nor leads to absurd results. *See Lamie,* 540 U.S. at 538, 124 S.Ct. 1023. As detailed above, the RRA and the SSA have significant differences, both in terms of benefits and in terms of their antigarnishment/antialienation statutes. These differences might explain

Congress's disparate treatment of RRA Benefits and SSA Benefits in the Bankruptcy Code and thus tend to undermine the intuitive appeal of the bankruptcy court's holding. For instance, it could be that Congress viewed the availability under the RRA of private-pension-plan-like benefits as grounds for not excepting such benefits from the definition of CMI. Alternately, given that the RRA's antianticipation clause prevents bankruptcy courts from including RRA Benefits in the calculation of projected disposable income, Congress might have felt it unnecessary to also exclude RRA Benefits from the CMI definition. Conversely, because the SSA does not have an antianticipation clause, Congress might have felt it necessary to expressly exclude SSA Benefits from the CMI definition.

In sum, the inclusion of RRA Benefits within the definition of CMI is both plain on the face of the statute and not absurd. Consequently, even if that inclusion were inadvertent, Congress rather than the courts should fix the CMI definition to expressly exclude RRA Benefits if that is what Congress actually meant to do. Thus, we hold that RRA Benefits fall within the statutory definition of CMI.

## C. The Antianticipation Clause and Projected Disposable Income

■ Even though we hold that RRA Benefits fall within the definition of CMI, we agree with the bankruptcy court that RRA Benefits cannot be considered when calculating projected disposable income. To do so would contravene the RRA's antianticipation clause.

To repeat, the antianticipation clause reads as follows:

(a) Except as provided in subsection (b) of this section and the Internal Revenue Code of 1986 [26 U.S.C. § 1 *et seq.*], notwithstanding any other law of the United States, or of any State, territory,

or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, *nor shall the payment thereof be anticipated* [.]

45 U.S.C. § 231m(a) (emphasis added).

While the meaning and purpose of this clause is far from apparent, the Supreme Court in *Hisquierdo* resolved its meaning. *See* 439 U.S. at 588–89, 99 S.Ct. 802. At issue in *Hisquierdo* was a California divorce decree that allocated future RRA benefits to a spouse. The spouse whose work had led to the benefits objected, contending that § 231m(a) prohibited such an "anticipation" of such benefits.

After examining the sparse legislative history, the *Hisquierdo* court concluded that the RRA's antianticipation clause must be similar in meaning and effect to similar provisions in express trusts. According to *Hisquierdo*, the antianticipation clause would bar any attempt to pay, or commit for payment, RRA Benefits before they come due. *Id.*

 Whereas CMI focuses exclusively on the debtor's financial past, it is now settled that the term "projected disposable income" is "forward looking" in nature. *See Hamilton*, 130 S.Ct. at 2471–74. *Hamilton* held that bankruptcy courts have discretion when calculating projected disposable income to consider significant changes in income that either had occurred or were substantially certain to occur, even though not reflected in the debtor's historical CMI figure. *Id.* In so holding, *Hamilton* relied in part on the ordinary meaning of the word "projected" as well as prior cases interpreting that word. *Id.; see also*

*Ransom*, 131 S.Ct. at 724 (stating that, when the Bankruptcy Code does not define a term used, we look to its ordinary meaning).

*Hamilton's* interpretation of projected disposable income as forward looking necessarily means that the term anticipates future income of the debtor. As such, it falls squarely within § 231m's exclusion. Consequently, in calculating projected disposable income, bankruptcy courts cannot consider RRA Benefits.

If Congress wanted bankruptcy courts to anticipate RRA Benefits as part of their calculation of projected disposable income, it would have needed to expressly limit the RRA's antianticipation clause to permit such anticipation. To hold otherwise would undermine the meaning of the phrase "notwithstanding any other law of the United States" in § 231m(a).

At oral argument, the Trustee asserted that the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (Apr. 20, 2005), impliedly repealed in part the RRA's antianticipation clause by including RRA Benefits in the definition of CMI.[13] But we do not perceive any direct conflict between the Bankruptcy Code and the RRA's antianticipation clause. Section 101(10A)(A) merely defines CMI, and Congress's inclusion of RRA Benefits in that definition does not by itself constitute any sort of conflict (direct or indirect) because, as set forth above, CMI by definition only looks backwards at historical income. Moreover, Congress did not define the term "*projected* disposable income," thereby enabling the courts to interpret that term according to its plain meaning, *see Hamil-*

---

**13.** If there were a direct conflict between the two statutes, the rule of construction that "the more recent of two irreconcilably conflicting statutes governs" might help to support the Trustee's argument. *See Watt v. Alaska,* 451

U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) (citing 2A C. Sands, Sutherland on Statutes and Statutory Construction § 51.02 (4th ed. 1973)).

*ton,* 130 S.Ct. at 2471, and in a manner consistent with the United States Code as a whole. *See generally U.S. v. Hall,* 617 F.3d 1161, 1166 (9th Cir.2010) (stating that courts must interpret the United States Code as a whole and must " 'assume that Congress is aware of existing law when it passes legislation.' "). Simply put, by declining to expressly define the term "projected disposable income" Congress left room for the courts to interpret that term in a manner that harmonizes it with existing federal law, including the RRA.

In any event, there is insufficient basis either on the face of the Bankruptcy Code or in the legislative history for us to find an implied partial repeal of the RRA's antianticipation clause. *See Branch v. Smith,* 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003) (stating that repeals by implication are disfavored and only will be found when the two statutes cannot be reconciled or when the latter statute is clearly intended to replace, and wholly covers the subject matter of, the earlier statute); *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (stating that " . . . courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

Thus, even though RRA Benefits fall within the definition of CMI, we hold that they cannot be considered when calculating projected disposable income.

## CONCLUSION

Accordingly, we VACATE the bankruptcy court's confirmation order and REMAND for further proceedings.