[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15778

_____

D. C. Docket No. 5:08-cv-00223-MTT

TERRY WAYNE DUCKWORTH,

Plaintiff-Appellee,

versus

ALLIANZ LIFE INSURANCE COMPANY
OF NORTH AMERICA, ET AL.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 30, 2013)

Before BARKETT and JORDAN, Circuit Judges, and SCHLESINGER,[*] District
Judge.

---

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District
of Florida, sitting by designation.

SCHLESINGER, District Judge:

Allianz Life Insurance Company of North America ("Allianz") appeals from a final order of the U.S. District Court for the Middle District of Georgia granting judgment in favor of Terry Duckworth ("Duckworth") on his claim that Allianz miscalculated the monthly benefit to which he was entitled under a long-term disability insurance policy ("the policy"). Allianz contends that the District Court erred in its interpretation of the policy's offset provision and that it was entitled to offset all of Duckworth's Railroad Retirement Act disability benefits—not merely a portion, as the District Court found. Allianz therefore asks this Court to reverse the judgment of the District Court and hold that all of Duckworth's Railroad Retirement Act disability benefits fall within the policy's offset provision. We find that the District Court erred and reverse.

## I. BACKGROUND

This case centers on the interpretation of a non-ERISA group long-term disability ("LTD") insurance policy issued by Allianz to the Southeastern Pennsylvania Transportation Authority ("SEPTA") as group policyholder. The policy provides that those entitled to LTD benefits will receive a monthly payment equal to sixty percent of their pre-disability monthly earnings, minus an offset for "other income benefits" that they receive. The policy's offset provision defines "other income benefits" to include "disability or retirement benefits under the

2

United States Social Security Act, The Canada Pension Plan, The Quebec Pension Plan, or any similar plan or act."  This appeal presents the issue of whether all of the disability benefits Duckworth receives under the Railroad Retirement Act fall within the operation of this offset provision.

As an eligible employee of SEPTA, Duckworth was insured under the policy.  He became disabled on September 11, 1996, after which date he received salary continuance and sick leave pay from SEPTA.  The salary continuance and sick leave ended on April 10, 1997, and Duckworth therefore became eligible for LTD benefits under the policy.  He submitted a claim for LTD benefits on March 27, 1997, and his claim was approved.  There is not now, nor has there ever been during the course of this litigation, any dispute as to the fact and onset date of Duckworth's disability.

Duckworth's LTD monthly benefit was initially calculated as sixty percent of his pre-disability monthly salary from SEPTA—$2,285.40.  However, on March 30, 2001, the Railroad Retirement Board ("RRB") retroactively awarded Duckworth an annuity pursuant to the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et seq.* ("RRA").  This annuity had an effective date of September 1, 1998, and consisted of two tiers.  Duckworth's initial monthly Tier I benefits were $1,432.00, and his monthly Tier II benefits were $481.75.  On February 2, 2007, the RRB retroactively increased Duckworth's monthly Tier I benefits to $1,477.00.

3

From September 1, 1998 through July 11, 2005, Allianz paid Duckworth a total of $97,762.35 in LTD benefits, but it suspended the payment of benefits on July 11, 2005, when it became aware that Duckworth was receiving RRA disability benefits.  Allianz believed that all Duckworth's RRA disability benefits constituted "other income benefits" that could be offset under the policy.  Alliance therefore believed that it had overpaid benefits to Duckworth and stated that it would withhold future payments of LTD benefits until the overpayment was extinguished. Allianz applied a retroactive offset effective as of the date that Duckworth began receiving RRA benefits—September 1, 1998.    Duckworth administratively appealed, and when Allianz refused to change its position, he filed a breach of contract action under Georgia law in the United States District Court for the Middle District of Georgia based on diversity jurisdiction.[1]   After the District Court denied cross motions for summary judgment, the case proceeded to a bench trial.

At trial, Allianz contended that Duckworth's railroad disability benefits had to be offset in their entirety or not at all because the policy's offset provision applies categorically to all disability benefits paid under an act that is "similar" to the Social Security Act ("SSA"), 42 U.S.C. § 301 *et seq.*, and Duckworth's railroad

---

[1] Initially, Duckworth incorrectly brought suit under ERISA, but the District Court granted him leave to maintain his suit as a diversity action.

disability benefits are paid under only one act—the RRA.  Allianz thus argued that the offset provision asks merely whether the RRA and SSA *themselves* are similar, not whether distinct tiers of disability benefits paid under those Acts are similar. The District Court rejected this "all or nothing" argument and instead proceeded along a very different mode of analysis that ultimately led it to separately analyze Duckworth's Tier I and Tier II benefits.

The District Court began by placing on Allianz the burden to prove the applicability of the offset provision.  The District Court then cited a bankruptcy case, In re Scholz, 447 B.R. 887 (9th Cir. BAP 2011), *rev'd on other grounds* 699 F.3d 1167 (9th Cir. 2012), for the proposition that "although the Railroad Retirement Act was indeed similar to the Social Security Act, there were significant differences," namely that "the Railroad Retirement Act provides, or can provide, Tier II benefits which are not similar to Social Security benefits."  The District Court, however, made no explicit finding that the policy's offset provision suffers from ambiguity.  The District Court nonetheless proceeded to apply "Georgia's rules of construction for insurance policies," which, as it noted, "do not favor insurance companies."  The District Court criticized Allianz's "all or nothing argument" as "dangerous," remarking that "while in many ways the Railroad Retirement Act benefits are similar, they are not similar in their entirety in a very significant way."

5

In its final analysis, the District Court declined to give the policy an all or nothing interpretation. Instead, the District Court concluded that "the intent of the policy was to create an offset for benefits similar to Social Security benefits" and that allowing Allianz to offset all "benefits received by [Duckworth] that have no similarity to the Social Security Act would be an injustice." The District Court therefore separately analyzed the offset provision's applicability to Duckworth's RRA Tier I and Tier II benefits. Under this bifurcated mode of analysis, the District Court concluded that Allianz should not have offset Duckworth's RRA Tier II benefits because they are not similar to SSA benefits, but rather analogous to benefits that would be received from a private pension fund. The District Court concluded that Allianz had properly offset Duckworth's RRA Tier I benefits, however, because they are similar to SSA benefits.

Given its finding that Duckworth's RRA Tier I benefits—but not his RRA Tier II benefits—constituted "other income benefits" under the policy, the District Court held that there was an overpayment of $15,228.97, not the higher amount that Allianz had claimed when it stopped paying benefits to Duckworth. The District Court, therefore, entered judgment in favor of Duckworth on his claim that Allianz had miscalculated his monthly benefit. Allianz then filed its notice of appeal.

6

## II.  STANDARD OF REVIEW

Because the District Court did not use extrinsic evidence to interpret the policy, we review its interpretation *de novo*.  Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc., 73 F.3d 335, 337 (11th Cir. 1996).  In diversity cases, the forum state's choice-of-law rules determine which state's substantive law applies.  Under Georgia's choice-of-law rules, the law of the place where a contract was made governs its interpretation, and under Georgia law, construction of a contract without the use of extrinsic evidence is a question of law for courts to decide.  Id. (citing cases).  We will, therefore, conduct a *de novo* review of the District Court's interpretation of the policy.

## III.  DISCUSSION

Allianz contends that the District Court improperly interpreted the offset provision of the policy.  In Allianz's view, the provision in question needs no interpretation at all.  According to Allianz, the plain language of the offset provision dictates that the only questions the District Court should have asked below are: (1) whether the RRA benefits that Duckworth receives are "disability or retirement benefits," and if so, (2) whether the SSA and RRA are "similar."  Allianz argues that these questions can only be answered in the affirmative, and that the plain language of the policy required the District Court to enter judgment in its favor.  Instead, Allianz contends, the District Court improperly based its

7

decision on an analysis of a fundamentally different question—whether *the benefits* paid under the SSA and the RRA are similar—and it did so without first identifying any ambiguity in the policy's language and after it had improperly placed upon Allianz the burden of proof.

Duckworth responds that the District Court followed the correct analytical framework by finding an ambiguity in the offset provision and resolving it through a correct application of Georgia's rules of construction for insurance policies.

Both parties agree that Georgia law governs this appeal.  As the District Court below and both parties have observed, no cases applying Georgia law have interpreted an insurance policy that allows an offset for disability benefits awarded under an act that is "similar" to the SSA.  Nor do any cases applying Georgia law appear to have decided which party bears the burden of proof when an insurer has invoked a policy's offset provision.  Given this lack of authorities, we must, therefore, look to general principles of Georgia law for guidance.  This Court has previously summarized Georgia's rules of construction for insurance policies:

> Georgia law directs courts interpreting insurance policies to ascertain the intention of the parties by examining the contract as a whole. A court must first consider the ordinary and legal meaning of the words employed in the insurance contract. An insurance policy should be read as a layman would read it. Parties to the contract of insurance are bound by its plain and unambiguous terms. If the terms of the contract are plain and unambiguous, the contract must be enforced as written.

8

An ambiguity exists, however, when the plain words of a contract are fairly susceptible of more than one meaning. Georgia law teaches that an ambiguity is duplicity, indistinctness, an uncertainty of meaning or expression. When a term in a contract is ambiguous, Georgia courts apply the rules of contract construction to resolve the ambiguity.

Pursuant to Georgia's rules of contract construction, the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. Further, ambiguities are construed against the drafter of the contract (i.e., the insurer), and in favor of the insured. . . . If the ambiguity remains after the court applies the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by the finder of fact.

Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 773–74 (11th Cir. 2011) (internal citations, alterations, and quotation marks omitted).  As both Allianz and Duckworth acknowledge, it is well-settled under Georgia law that courts may not look beyond the text of an insurance policy and apply canons of construction absent a finding of ambiguity.  The threshold questions presented by this appeal are first, whether the District Court found an ambiguity in the policy's offset provision and, if so, second, whether it erred in its resolution of the ambiguity or in the finding of ambiguity itself.

Even under a deferential reading of the District Court's order, nowhere did the District Court explicitly address any ambiguity in the text of the policy before going beyond the text to determine its unwritten intent.  Instead, the District Court briefly discussed one way in which Railroad Retirement benefits differ from Social

Security benefits, and then immediately proceeded to an application of "Georgia's rules of construction for insurance policies." This mode of analysis ran roughshod over the settled axiom of Georgia law that courts may apply rules of construction only "[w]hen a term in a contract is ambiguous." Alea London Ltd., 638 F.3d at 773.

More importantly, even if we interpret the District Court's order to have found an ambiguity in the policy, the manner in which it resolved the purported ambiguity is at-odds with the language of the policy. The policy states that an offset may be made for "disability . . . benefits [paid] under the United States Social Security Act . . . or any similar . . . act." This language cannot be interpreted so broadly as to allow a court to bifurcate and separately analyze distinct tiers of benefits awarded under the same act. The policy speaks in categorical terms and directs a court to ask only whether the "act" under which disability benefits are paid is "similar" to the SSA. Disability benefits may be offset in their entirety if the act under which they are paid is "similar" to the SSA; otherwise, they may not be offset at all. The District Court rejected this "all or nothing" interpretation, but this is the only interpretation that the language of the policy supports.

The District Court, therefore, should have inquired whether the RRA—under which Duckworth receives his railroad disability benefits—is "similar" to the SSA.

10

If the policy were ambiguous, this is where the ambiguity would reside. Under Georgia law, an ambiguity arises when a policy is susceptible to two or more "logical and reasonable" interpretations. Hurst v. Grange Mut. Cas. Co., 266 Ga. 712, 716, 470 S.E.2d 659, 663 (1996). If an ambiguity exists in a policy, it will be "construed against the drafter of the contract (i.e., the insurer), and in favor of the insured." Alea London Ltd., 638 F.3d at 774 (internal citations omitted). Therefore, if the word "similar" can *logically and reasonably* be interpreted in two ways, one of which would include, and one of which would exclude, Duckworth's Railroad Retirement benefits from the offset provision's operation, Georgia law mandates selection of the interpretation that favors Duckworth.

Thus we reach the question that the District Court should have asked before looking beyond the text of the policy: would it be a "logical and reasonable" interpretation of the offset provision to hold that the RRA is not "similar" to the SSA? The answer most assuredly must be no. Under Georgia law, words in an insurance policy "generally bear their usual and common" meaning. O.C.G.A. § 13-2-2(2); Claussen v. Aetna Cas. & Sur. Co., 259 Ga. 333, 334, 380 S.E.2d 686, 687–88 (1989). Black's Law Dictionary defines "similar" as "[n]early corresponding; resembling in many respects; somewhat like; having a general likeness." Black's Law Dictionary 1554 (4th Ed. 1968). In its second definition for a less common usage of the word, Black's Law Dictionary defines "similar" as

11

"exactly like; identical; exactly corresponding (at least in all essential particulars)."

Id.  Webster's Dictionary defines "similar" as "having characteristics in common, strictly comparable; alike in substance or essentials, corresponding."  Merriam-Webster's Collegiate Dictionary 1093 (10th Ed. 1999).

Under the usual and common meaning of the word, the RRA and SSA are certainly "similar."  "The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers,"  Eichel v. New York Central Railroad Co., 375 U.S. 253, 254, 84 S.Ct. 316, 317 (1963), and even in the wake of its 1974 amendment that observation remains true.  As amended, the RRA still "provides a system of annuity, pension, and death benefits . . . similar to the Social Security Act."  Weyerhaeuser Co. v. R.R. Ret. Bd., 503 F.3d 596, 597 (7th Cir. 2007).

Duckworth observes that the RRA now offers benefits in two tiers, the first of which resembles social security benefits and the second of which resembles benefits paid under a private pension fund.[2]  Even so, this difference between the two acts does not make them dissimilar when viewed holistically.  As this Court, in

---

[2] RRA Tier I benefits are based on earnings an employee has acquired under both Railroad Retirement and Social Security covered employment, and are calculated using Social Security benefit formula, but with Railroad Retirement age and service requirements.  RRA Tier II benefits, on the other hand, are based entirely on railroad earnings and are computed under separate formula.  They resemble benefits paid over and above Social Security benefits to workers in other industries.  Dist. Ct. Dkt. 35-9 at pp. 2–3, Railroad Retirement Board, Calculating Railroad Retirement Employee Annuities: Benefit Information, *available at* http://www.rrb.gov/opa/cal_rr_ann/calcrrann.asp (last visited Jan. 23, 2013).

line with the unanimous concurrence of our sister courts, has held: "The provisions of the Railroad Retirement Act are so closely analogous to those of the Social Security Act that regulations and cases interpreting the latter are applicable to the former." Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1213 (11th Cir. 1991). See also, e.g., Harris v. R.R. Ret. Bd., 198 F.3d 139, 142 (4th Cir. 1999); Aspros v. R.R. Ret. Bd., 904 F.2d 384, 386 (7th Cir. 1990); Burleson v. R.R. Ret. Bd., 711 F.2d 861, 862 (8th Cir. 1983); Estes v. R.R. Ret. Bd., 776 F.2d 1436, 1438 (9th Cir. 1985); Abbruzzese v. R.R. Ret. Bd., 63 F.3d 972, 974 n.3 (10th Cir. 1995).

In light of these observations, if the words "disability . . . benefits [paid] under the United States Social Security Act . . . or any similar . . . act" are to have any meaning at all, they must at the very least encompass disability benefits paid under the RRA. The policy's offset provision directs us to compare the RRA and SSA with our reading glasses, not under a microscope. Viewed from that level, it is difficult to envision an act that more closely resembles the SSA than does the RRA. The policy's offset provision therefore is not afflicted with any ambiguity, and the District Court should not have resorted to canons of construction to determine the unwritten intent of the provision. It may be true, as the District Court remarked, that allowing Allianz to offset the entirety of Duckworth's RRA benefits would be unfair. But we are not aware of any rule of Georgia law that allows us to re-write the provisions of an unambiguous contract in an effort to

13

strike a better bargain than the one that the parties reached.

Given the foregoing analysis, we need not decide the question of which party bore the burden of demonstrating the applicability of the offset provision. Hypothetically, even if Allianz bore the burden, it carried it by showing that the RRA and SSA are "similar." The policy supports no other interpretation, and Allianz was entitled to offset the full amount of Duckworth's RRA disability benefits.

## IV. CONCLUSION

For the foregoing reasons, the decision of the District Court is **REVERSED** and this case is **REMANDED** to the District Court for entry of judgment in favor of Allianz in accordance with this decision.