[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13420
_____

D.C. Docket No. 1:15-cv-01085-SCJ


GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Plaintiff - Appellee,

versus

JANIS C. GORDON,
Administration of the Estates of
Robert Alan Myles, et al.,

Defendants,

HANNA MERCER,
ANN MERCER,
Administrator of the Estate of Robert Alan Myles,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 13, 2018)

Before TJOFLAT and JORDAN, Circuit Judges, and STEELE,[*] District Judge.

PER CURIAM:

GEICO brought this declaratory judgment action against Hanna Mercer, seeking a determination of its obligations under an umbrella policy it issued to Robert Myles. That GEICO umbrella policy, with respect to a motor vehicle, requires that the vehicle be "insured by a primary auto policy." The district court relied upon the umbrella policy's definition of "primary insurance" to determine that the rental vehicle Mr. Myles was driving (and Ms. Mercer was a passenger in) was not "insured by a primary auto policy" at the time of their accident. Following a review of the record, and with the benefit of oral argument, we conclude that the district court's reliance on the definition of "primary insurance" to determine the meaning of "primary auto policy" was error. We therefore reverse the district court's grant of summary judgment in favor of GEICO.

# I

Because we write for the parties, we assume their familiarity with the procedural and factual background, and set out only what is necessary to explain our decision.

---

[*] Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

In December of 2013, Ms. Mercer was a passenger in a Suzuki automobile driven by Mr. Myles.  The vehicle, rented in Costa Rica, was involved in a tragic accident there, killing Mr. Myles and severely injuring Ms. Mercer.  Mr. Myles had purchased insurance for the rented Suzuki from Qualitas Compania de Seguros, S.A., a Costa Rican insurance company.  He also held an umbrella policy issued by GEICO.

The parties dispute whether Mr. Myles was an "insured" under the GEICO umbrella policy at the time of the accident in the rented Suzuki.  According to the umbrella policy, as amended, "***insured***" means:

> (a) ***You*** and ***your*** spouse if a resident of ***your*** household.  With respect to a motor vehicle, such person is an ***insured*** only if the motor vehicle meets the definition of ***auto*** in this policy and is insured by a primary auto policy.[1]

A-32.  The parties agree that the Suzuki automobile rented by Mr. Myles is an "***auto***" as defined in the umbrella policy.  The question, then, is whether the Suzuki automobile was "insured by a primary auto policy."

GEICO contends that it was not because the Qualitas policy was not "primary insurance" as defined in the umbrella policy.  According to the umbrella policy "***primary insurance***" means, among other things, "insurance . . . which is payable on behalf of an ***insured*** for liability for ***personal injury*** or ***property***

---

[1] The umbrella policy uses bold and italics for certain defined terms.  We have matched the umbrella policy's typeface when quoting it in this opinion as it is helpful to our analysis.

3

*damage*." The district court accepted GEICO's argument and ruled that, because Ms. Mercer could not show that Qualitas' policy provided coverage, Mr. Myles was not an "insured" under the umbrella policy at the time of the accident.

Ms. Mercer, on the other hand, contends that the Qualitas policy Mr. Myles purchased for the Suzuki is "a primary auto policy" and therefore sufficient to make Mr. Myles an insured under the umbrella policy. There is no doubt that the Suzuki was listed as an insured vehicle in the Qualitas policy.

## II

Under Georgia law, we must "first consider the ordinary and legal meaning of the words employed in the insurance contract. An insurance policy should be read as a layman would read it." *St. Paul Mercury Ins. Co. v. FDIC*, 774 F.3d 702, 708 (11th Cir. 2014) (quotation omitted). "[W]hen the plain words of a contract are fairly susceptible to more than one meaning," the contract is ambiguous and we "apply the rules of contract construction to resolve the ambiguity." *Id.* These rules of construction include looking at "the whole contract . . . in arriving at the construction of any part" and construing ambiguities "against the drafter of the contract (i.e. the insurer), and in favor of the insured." *Id.*

## A

The GEICO umbrella policy provides that, to be an "insured," the vehicle must be "insured by a primary auto policy." The term "primary auto policy" is not

4

defined in the umbrella policy. The umbrella policy provides that undefined terms will have the definition given to them in "*your* primary insurance policy," but the term "primary auto policy" is not defined in the Qualitas policy. Left undefined, the term "primary auto policy" is ambiguous. *See St. Paul Mercury Ins. Co.*, 774 F.3d at 709 ("There is a low threshold for establishing ambiguity in an insurance policy. 'Ambiguity in an insurance contract is duplicity, indistinctiveness, uncertainty of meaning of expression, and words or phrases which cause uncertainty of meaning and may be fairly construed in more than one way.'") (quoting *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 548 S.E.2d 67, 69 (Ga. Ct. App. 2001)).

We conclude that the district court improperly relied upon the defined term "primary insurance" to provide the definition for the similar, but undefined, term "primary auto policy." Throughout the umbrella policy, defined terms (including "primary insurance") are marked in bold and italics. "[P]rimary auto policy" is not. Moreover, the defined term "primary insurance" is not included in the relevant definition of "insured." *See* GEICO Umbrella Policy, Part I, § 7(a). Yet, it does appear in several other locations including in the definition of "damages" found on the same page as the definition of "insured." In fact, where GEICO wished to limit its coverage to only items covered by "primary insurance," it appears to have done so. *See* GEICO Umbrella Policy, Part III, § 5 (excluding

5

coverage of "***Business*** pursuits or ***business property*** of an ***insured*** unless covered by ***primary insurance*** described in the ***declarations***…").  We presume that GEICO used the defined term "primary insurance" when it wanted to and that the use of "primary auto policy" therefore signifies something different.  *See Ins. Co. of Pennsylvania v. APAC-Se., Inc.*, 677 S.E.2d 734, 739 (Ga. Ct. App. 2009) ("Thus, if the parties wanted to limit additional insured coverage to policies specifically required under the Subcontract, they clearly knew how to do so.  Put another way, the parties would not have used two different terms in short sequence within the same paragraph to mean the exact same thing.  In order to give effect to all of the contractual terms, 'all policies' thus must be construed as greater in scope than 'required insurance' under the Subcontract."); *Tyson v. McPhail Properties, Inc.*, 478 S.E.2d 467, 472 (Ga. Ct. App. 1996) (resolving ambiguity in insurance contract under rule of construction that contract "would not have used two different terms in two sequential paragraphs to describe the same thing").

Examining the umbrella policy as a whole, as we must, we conclude that the interpretation of "primary auto policy" as something different than "primary insurance" is "the construction which will uphold a contract in whole and in every part." *Duckworth v. Allianz Life Ins. Co. of N. Am.*, 706 F.3d 1338, 1342 (11th Cir. 2013).  The "Limits of Liability" section of the policy contemplates a situation where there may be no primary insurance available.  For example, "if ***primary***

6

*insurance* is not in force at the time of loss . . . [GEICO would] pay only those *damages* which exceed the liability limits in Item V. of the *declarations*." GEICO would pay damages that exceed the retained limit if "an *occurrence* results in *personal injury* or *property damage*, and . . . is not covered under the terms and conditions of *your primary insurance*, but . . . is covered by this policy." And GEICO would "pay only those *damages* which exceed the liability limits" "if a primary insurer does not pay because of . . . an *insured's* failure to comply with a provision of *primary insurance*."[2]

Under the district court's and GEICO's reading—which substitutes "primary insurance" for "insured by a primary auto policy"—there does not appear to be a situation where one could be an "insured" (and therefore needing primary insurance coverage) while not having primary insurance "in force at the time of loss." Reading "primary auto policy" as something different than "primary insurance" allows us to follow the "cardinal rule of construction that a contract should be construed in a manner that gives effect to all of the contractual terms." *Ins. Co. of Pennsylvania*, 677 S.E.2d at 739. *See also Schafer Properties v. Tara State Bank*, 469 S.E.2d 743, 746 (Ga. Ct. App. 1996) (requiring contracts to be

---

[2] This provision also casts doubt on GEICO's argument and the district court's decision that Qualitas must be obligated to pay (i.e. insurance is "payable") in order for Mr. Myles to be considered an "insured."

construed in a way that "gives meaning and effect to all the terms of the contract over that which nullifies and renders meaningless a part of the document").

**B**

The district court apparently borrowed the definition of the related term "primary insurance" (i.e., that coverage was "payable") to determine whether the Suzuki was "insured by a primary auto policy," thereby requiring Ms. Mercer to show that Qualitas would provide coverage for the accident. As noted, we do not think the district court should have equated those terms. The umbrella policy explains that undefined terms "will follow the definitions of *your* primary insurance policy," but, in this case, the Qualitas policy does not define "primary auto policy." We are left to figure out the meaning of the term "primary auto policy," which is undefined by the relevant policies and subject to more than one reasonable construction. The district court's resolution of this ambiguity in favor of GEICO's proposed construction and against providing insurance was contrary to Georgia law. *See Western Pacific Mut. Ins. Co. v. Davies*, 601 S.E.2d 363 (Ga. Ct. App. 2004) ("Under the applicable rules of contract construction, when the language of an insurance contract is ambiguous and subject to more than one reasonable construction, the policy must be construed in the light most favorable to the insured, which provides him with coverage.") (alterations omitted). *See also St. Paul Mercury Ins. Co.*, 774 F.3d at 709.

Looking to the "usual and common signification," OCGA § 13–2–2(2), of the term "primary auto policy," we note that a "primary policy" is defined as one that "provides the first layer of coverage and attaches immediately upon the happening of an occurrence or when a claim is made."  1-1 New Appleman on Insurance Law § 1.06 (2017).  *See also* Couch on Insurance § 6:35 (2017) (explaining that a "primary policy" is "[t]he first to kick in" and "covers any loss over a small deductible, has a relatively small maximum coverage, and requires relatively high premiums").  Although the definition of "primary insurance" provided in the umbrella policy may be relevant evidence regarding the definition of the term "primary auto policy," placing sole reliance on it was error.

## III

The summary judgment in favor of GEICO is reversed, and the case is remanded to the district court to re-evaluate the parties' summary judgment motions (and any other submissions the district court wishes to consider) in light of this opinion.

**REVERSED AND REMANDED.**